IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ABDUL JABBAR MACK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 115-129 |
| | ) | (Formerly CR 111-270) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at the Federal Medical Center in Butner, North Carolina, has

filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court

**REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary

hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of

Respondent.

## I.    BACKGROUND

### A.    Indictment

On October 10, 2012, a grand jury returned a second superseding indictment,

charging Petitioner and his codefendants with conspiracy to distribute and possess with intent

to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and

846 (Count One), possession with intent to distribute controlled substances, in violation of 21

U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Two), and conspiracy to commit money

laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(h), and 2 (Count Three).

United States v. Mack, CR 111-270, doc. no. 186 (S.D. Ga. Jul. 11, 2012) ("CR 111-270").

The Court appointed attorney Brendan N. Fleming to represent Petitioner. (Id., doc. no. 150.)

## B. Agreement to Plead Guilty

On February 25, 2013, Petitioner pleaded guilty to Counts I and III for drug conspiracy and money laundering. (Id., doc. nos. 251, 252.) The plea agreement contained a factual basis for the plea which stated in relevant part:

> [B]eginning on or about January 1, 2006 . . . the defendant . . . did knowingly and intentionally combine, conspire, confederate, and agree together with other persons . . . to distribute and possess with intent to distribute 5 kilograms or more of cocaine hydrochloride, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841 (a)(1), 841(b)(1)(A), all done in violation of Title 21, United States Code, Section 846. . . . [B]eginning . . . at least as early as January 1, 2006 . . . the defendant . . . would knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of . . . conspiracy to possess with intent to distribute and to distribute controlled substances and possession with intent to distribute controlled substances, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity [and] knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(I), all done in violation of Title 18, United States Code, Sections 1956(h) and 2. . . . (Id., doc. no. 252, pp. 5-7.)

As to the amount of cocaine used to calculate the sentencing guideline range, the parties stipulated "based on the evidence available to the government at this time, the quantity of controlled substances to be attributed to the defendant under this plea agreement is at least 15 kilograms of cocaine hydrochloride but less than 59 kilograms of cocaine hydrochloride." (Id. at 6.)

The plea agreement also contained an appeal and collateral attack waiver, as

follows:

> To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court.

(Id. at 5.)

Petitioner attested he read the plea agreement, understood what it said and meant, and it accurately set forth the terms and conditions of the agreement as negotiated by his attorney on his behalf and with his permission.  (Id. at 13.)

### C.    Change of Plea Hearing

During the change of plea hearing, the Honorable J. Randal Hall established Petitioner's competence to enter a guilty plea if he desired.  (Id., doc. no. 302, p. 34.) Petitioner also testified under oath he had adequate time to discuss his case with his attorney and was entirely satisfied with the services rendered by Mr. Fleming.  (Id. at 7, 9.)  Judge Hall read each count of the indictment and asked if Petitioner understood the charges.  (Id. at 4-6.)  Petitioner confirmed he understood.  (Id. at 7.)  Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights.  (Id. at 9-12.)

Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent.  (Id.) Petitioner affirmed no one had forced, threatened, or pressured him to plead guilty, (id. at 3)

3

nor had anyone guaranteed, predicted, or prophesied Petitioner would receive a specific sentence. (Id. at 18.)

In addition, Judge Hall reviewed the waiver provision in Petitioner's plea agreement, informing Petitioner he was "waiv[ing] or giv[ing] up [his] rights to appeal [his] sentence and conviction directly and indirectly in a post-conviction proceeding on any ground." (Id. at 13.) However, Judge Hall explained Petitioner could appeal if Petitioner was sentenced above the guideline range, above the statutory range, or if the government appealed. (Id.) Petitioner confirmed he understood. (Id.) Judge Hall also asked Petitioner if he discussed his plea agreement with counsel and if he signed the plea agreement, cautioning Petitioner if he did, he would be bound by all the terms of the agreement. (Id. at 11.) Petitioner affirmed he discussed the plea agreement with counsel, signed the plea agreement, and understood he would be bound by all the terms within the plea agreement. (Id. at 12.)

Judge Hall heard the factual basis for Petitioner's guilty plea from Special Agent Jamie Lukich with the Drug Enforcement Administration (DEA). (Id. at 20.) SA Lukich testified that, on January 26, 2011, Cleveland Hall was stopped by the Warren County, Georgia police and found to possess fourteen kilograms of cocaine. (Id. at 20, 26-27.) Law enforcement officials later determined Glenn Cook, a known drug trafficker in Atlanta, Georgia, was the source of the cocaine. (Id.) After his indictment in the Northern District of Georgia, Cook began cooperating with law enforcement and identified Petitioner and his co-defendant LaTron Ware as the recipients of the cocaine seized from Hall's car. (Id.) Cook further stated he had been supplying Petitioner and Ware with cocaine prior to that date and Hall was their carrier. (Id.)

A financial investigation showed Petitioner claimed a total of $33,428 on his income tax returns from 2007 through 2011, yet made deposits and cash expenditures in the amount of $231,362 over this same period. (Id. at 27.) SA Lukich concluded this excess income came from selling drugs. (Id.) Furthermore, SA Lukich discussed a 2007 Dodge Charger driven by Petitioner that was registered to Ware and purchased with alleged $8,500 per month in income from Made Entertainment, a joint business venture between Petitioner and Ware. (Id. at 30.) However, Made Entertainment showed no income on its tax returns for 2006, 2007, and 2008. (Id.) Judge Hall accepted the guilty plea, finding a sound factual basis for it. (Id. at 34.)

### D.     Presentence Investigation Report (PSI)

The United States Probation Office prepared a PSI, which set Petitioner's base offense level for Count One at thirty-four, pursuant to U.S.S.G. § 2D1.1, and Petitioner's base offense level for Count Three at forty, pursuant to U.S.S.G. § 2S1.1. (PSI ¶¶ 46, 52.) Petitioner's offense level for Count One increased to forty after enhancements for: (1) organizer or leader of a criminal activity that involved five or more participants, and (2) pattern of criminal conduct engaged in as a livelihood. (PSI ¶¶ 47, 49.) Petitioner's offense level for Count increased to forty-two after an enhancement for his concurrent conviction under 18 U.S.C. § 1956. (PSI ¶ 53.) Because the adjusted offense level from Count Three resulted in the higher offense level, Petitioner's combined adjusted offense level was forty-two. (Id. ¶ 59.) This offense level decreased three points for acceptance of responsibility resulting in a total offense level of thirty-nine. (PSI ¶¶ 60-62.) Based on a total offense level of thirty-nine and a criminal history category of I, Petitioner's guideline imprisonment range was between 262 and 327 months. (PSI ¶ 89.)

5

**E.    Sentencing**

Sentencing was held on August 7, 2013.  (CR 111-270, doc. no. 299.)  Through his counsel, Petitioner filed two objections to the PSI: (1) the enhancement pursuant to U.S.S.G. § 2D1.1(b)(14)(E), criminal livelihood, constituted double counting as the conduct was the result of Petitioner pleading guilty to Count Three, and (2) the four-level enhancement pursuant to U.S.S.G. § 3B1.1(2) was improper because Petitioner's role in the conspiracy was not extensive.  PSI Addendum ¶¶ 1-2.  At sentencing, Mr. Fleming argued Petitioner's double counting objection to the Court at length; however, after hearing the Court's and Assistant United States Attorney ("AUSA") Patricia Rhodes's responses and consulting with Petitioner, he withdrew that objection.  (CR 111-270, doc. no. 299, pp. 4-11.)  The parties then turned to Petitioner's second objection, with SA Lukich and Petitioner both testifying regarding Petitioner's role in the conspiracy.  (Id. at 11, 15-42.)  After hearing arguments from Mr. Fleming and AUSA Rhodes, Judge Hall overruled the objection, adopted the PSI statements as the Court's findings of fact, and determined the applicable guidelines range was 262 to 327 months.  (Id. at 42-50.)  Judge Hall then heard statements in mitigation from Petitioner and his attorney.  (Id. at 50-52.)

After considering the statements in mitigation, Judge Hall outlined aggravating factors.  Judge Hall noted Petitioner was a major distributor of cocaine in both the Augusta, Georgia, and Charleston, South Carolina, area.  (Id. at 53.)  Judge Hall further noted Petitioner was a leader in the distribution operation, using more than one courier to transport quantities of cocaine likely exceeding 400 kilograms in vehicles outfitted with hidden compartments or traps.  (Id.)  Finally, Judge Hall noted Petitioner's lack of concern for the communities into which his drugs were distributed.  (Id. at 54.)  Judge Hall dismissed Count

Two and sentenced Petitioner to 262 months of incarceration, the bottom of Petitioner's guideline range, five years of supervised release, a $200.00 special assessment, and a $3,000 fine. (Id., doc. no. 281.)

### F. Subsequent Proceedings

Petitioner appealed his sentence to the Eleventh Circuit Court of Appeals. (Id., doc. no. 286.). On August 15, 2014, after considering Mr. Fleming's Anders brief and conducting an independent review of the entire record, the Eleventh Circuit granted Mr. Fleming's motion to withdraw and affirmed Petitioner's sentence and conviction because the record revealed no arguable issues of merit. United States v. Mack, 575 F. App'x 869 (11th Cir. 2014).

In July and August 2015, Petitioner filed two motions to reduce his sentence on the basis of Amendment 782 to the United States Sentencing Guidelines, which retroactively revised the guidelines applicable to drug trafficking offenses. CR 111-270, doc. nos. 332, 334. Judge Hall granted Petitioner's motions on September 9, 2015, and reduced Petitioner's sentence to 210 months. (Id., doc. 339.)

On August 17, 2015, Petitioner timely filed this 28 U.S.C. § 2255 motion. (Doc. no. 1.) Petitioner alleges four grounds of relief: (1) trial counsel was ineffective for advising him to plead guilty to, and failing to object to, the conspiracy charge's lack of a "specific object," (2) trial counsel was ineffective for failing to identify a "specific object" for the money laundering conspiracy at sentencing, (3) trial counsel was ineffective for failing to object to "double counting" which resulted in a two-level enhancement in his sentence calculation, and (4) appellate counsel was ineffective for not raising the first three grounds on appeal. (Id. at 3-4, 6-7.) Respondent asserts Petitioner's claim is barred by the collateral attack

waiver, Petitioner entered a knowing and voluntary guilty plea, and Petitioner's claims are otherwise meritless. (Doc. no. 5.)

## II. DISCUSSION

### A. There is No Need for an Evidentiary Hearing.

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Because Petitioner's claims are barred from review, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

**B.    Petitioner's Valid Collateral Attack Waiver Bars Grounds Two and Three.**

Grounds Two and Three of Petitioner's § 2255 motion are precluded by the waiver provision in the plea agreement, in which Petitioner waived his right to collaterally attack his conviction and sentence.  It is well settled a waiver of the right to collaterally attack a sentence and conviction is only enforceable if the waiver is knowing and voluntary.  United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008); see also United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365-67 (N.D. Ga. 2004) (applying case law concerning waiver of direct appeal to waiver of right to collateral proceedings).

"To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver."  Weaver, 275 F.3d at 1333.  If the government meets this burden, then an appeal and collateral attack waiver is enforceable.  See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, Respondent has demonstrated the existence of a valid collateral attack waiver. The plea agreement signed and verified by Petitioner fully set forth that, as a condition of his guilty plea, he was waiving any right to collateral attack of his sentence and conviction or the

knowing and voluntary nature of his guilty plea. (See CR 111-270, doc. no. 252, p. 5 ("the defendant voluntarily and expressly waives . . . the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground . . . .").) Furthermore, Judge Hall reviewed Petitioner's plea agreement during the plea colloquy, and specifically referenced the waiver provision. (Id., doc. no. 302, p. 12-14.) Judge Hall explained as a result of the waiver provision, Petitioner was ""waiv[ing] or giv[ing] up [his] rights to appeal [his] sentence and conviction directly and indirectly in a post-conviction proceeding on any ground." (Id. at 13.) Petitioner acknowledged he understood and agreed to the terms of the plea agreement. (Id. at 14.)

The collateral attack waiver provided for three limited exceptions: Petitioner could file a direct appeal or collateral attack if his sentence (1) exceeded the statutory maximum, or (2) by variance or upward departure, was higher than the advisory sentencing guideline range as found by the sentencing court, or (3) was appealed by the government. (Id., doc. no. 252, p. 5.) None of Petitioner's claims in Grounds Two or Three falls within the exceptions to the collateral attack waiver. In Ground Two, Petitioner claims counsel was ineffective for failing to object to the lack of a specific object to the money laundering count at sentencing. (Doc. no. 1, p. 3.) In Ground Three, Petitioner claims counsel was ineffective for failing to object to "double counting" of fact resulting in a two level enhancement in his sentence calculation. (Id. at 4.) These claims do not allege Petitioner's sentence exceeded the statutory maximum or that it was higher than the advisory sentencing guideline range, and are thus barred by the collateral attack waiver. See Williams, 396 F.3d at 1341-42 (11th Cir. 2005) (precluding claim for ineffective assistance of counsel at sentencing based on valid sentence-appeal waiver).

Thus, the collateral attack waiver bars Petitioner's claims in Grounds Two and Three because they do not fall within the narrow exceptions to the waiver.  See Brown v. United States, 256 F. App'x 258, 262 (11th Cir. 2007) (*per curiam*) (refusing to consider merits of sentencing argument in § 2255 proceeding based on valid sentence-appeal waiver provision in plea agreement); United States v. Martin, 549 F. App'x 888, 889-90 (11th Cir. 2013) (*per curiam*) (refusing to consider claims of PSI errors based on knowing and voluntary sentence appeal waiver).  Accordingly, the Court finds Petitioner is not entitled to relief on these grounds.  Even if the collateral attack waiver does not bar these grounds, they are meritless as explained *infra*.

**C.     Even If Not Barred by the Collateral Attack Waiver, Petitioner's Ineffective Assistance Claims in Grounds Two and Three Are Meritless.**

As discussed *supra*, the collateral attack waiver bars Petitioner's ineffective assistance of counsel claims in Ground Two and Three.  However, even if the collateral attack wavier did not bar these claims, they are meritless and do not afford Petitioner relief.

**1.     Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003).  Petitioner must show counsel was constitutionally ineffective under the two prongs of Strickland by proving defense counsel's performance was deficient and prejudicial.  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202,

1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694). As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Therefore, Petitioner must show both counsel's representation fell below an objective standard of reasonableness, *and* there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Id. at 56-59.

### 2. Petitioner Has Not Shown Entitlement to Relief Based on the Claim in Ground Two.

In Ground Two, Petitioner argues counsel was ineffective for failing identify a "specific object" for the money laundering conspiracy at sentencing, resulting in Petitioner's sentence being based on trafficking 400 kilograms of cocaine. (Doc. no. 1, pp. 6-7.) This claim is without merit.

Petitioner bases his claim on a misinterpretation of a statement made by Judge Hall at sentencing. In elucidating the Court's reasons for selecting Petitioner's specific sentence within the guideline range, Judge Hall stated, "The organization of which Mr. Mack was a leader used more than one courier to transport quantities of cocaine that likely exceeded 400 kilograms. . . ." CR 111-270, doc. no. 299, p. 53. Petitioner concludes from this statement his 240 months sentence was derived from this 400 kilogram amount. (See doc. no. 1, p. 7.)

However, contrary to his understanding, Petitioner was not sentenced based on 400 kilograms of cocaine. Rather, pursuant to the stipulation in his plea agreement with the

Government, Petitioner was attributed at least fifteen but not more than fifty kilograms of cocaine. See CR 111-270, doc. no. 252, p. 6; PSI ¶ 46. Petitioner's base offense levels for Count One and Count Three were based on this range of fifteen to fifty kilograms. See PSI ¶ 46; see also PSI ¶ 52 ("The base offense level [for Count Three] is the offense level for the underlying offense [Count One] from which the laundered funds were derived. . . ."). Thus, contrary to Petitioner's assertion, Petitioner's sentence was based on fifteen to fifty kilograms rather than 400 kilograms. Counsel's failure to object to Petitioner's sentence was neither deficient nor prejudicial under Strickland, as Petitioner previously stipulated in his plea agreement to being attributed fifteen to fifty kilograms of cocaine for purposes of sentencing and was sentenced within a guideline range based on that amount.

Accordingly, Petitioner's claims in Ground Two are without merit and Petitioner has not demonstrated his counsel was ineffective.

### 3. Petitioner Has Not Shown Entitlement to Relief Based on the Claim in Ground Three.

In Ground Three, Petitioner argues counsel was ineffective for "failing to object to the double counting of the same facts for the same facts for two level [sentencing] enhancement." (Doc. no. 1, p. 4.) This claim is without merit.

Petitioner's claim is meritless because it is contradicted by the record; Petitioner's counsel did in fact object to "double counting." Petitioner's counsel filed the following objection to the PSI:

> The defendant asserts that the enhancement pursuant to USSC § 2D1.1(b)(14)(E), criminal livelihood, is double counting. The defendant's sentence has been enhanced, for this conduct as a result of the defendant pleading guilty to Count 3 of the indictment, conspiracy to commit money laundering. Therefore, this enhancement should not be applied.

PSI Addendum ¶ 1. Petitioner's counsel then raised and argued this same objection at sentencing. (CR 111-270, doc. no. 299, pp. 4-11.) Only after extended argument and consulting with Petitioner did counsel withdraw the objection. (Id. at 11.)

The withdrawal was warranted because it was clear from the hearing that the objection was not well founded. See id. at 9 ("THE COURT: [Under] the two-point enhancement for criminal livelihood, . . . you're not counting the same dollars twice. You're just simply saying on criminal livelihood this defendant was deriving his livelihood for this period of time from this drug conspiracy activity."). Therefore, because Petitioner's counsel actually did object to "double counting" at sentencing and correctly decided to withdraw it, Petitioner's claim of ineffective assistance is contrary to fact and meritless.

**D.      Petitioner Is Not Entitled to Relief on His Ground One Ineffective Assistance Claim.**

Petitioner claims in Ground One that, prior to entry of his guilty plea, his attorney advised him to plead guilty to the money laundering conspiracy offense despite the charge lacking a "specific object" and then failed to challenge this faulty charge at the plea hearing. (Doc. no. 1, p. 3.) Although he does not directly claim his plea was coerced or involuntary, Petitioner does challenge counsel's advice to "plea guilty to a charge with no specific object, therefore, depriving Petitioner of his right to loss of liberty without first being afforded due process." (Doc. no. 1, p. 3.) Liberally construed, this assertion, if found to have merit, would cast doubt not only on the validity of the appeal and collateral attack waiver, but also the knowing and voluntary nature of the entirety of the guilty plea.

A defendant cannot waive a claim alleging ineffective assistance during plea negotiations. Vaca-Ortiz, 320 F. Supp. 2d at 1365-67; see also Williams v. United States,

396 F.3d 1340, 1341-42 (11th Cir. 2005) ("[T]here may be a distinction between a § 2255 claim of ineffective assistance related to the validity of a plea in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement.").  This is because ineffective assistance of counsel in entering the plea "would require a finding that the plea was not entered knowingly and voluntarily, which would in turn mean that a court could not enforce a waiver contained within that plea agreement."  Vaca-Ortiz, 320 F. Supp.2d at 1365 (citing Bushert, 997 F.2d at 1350-51). However, as discussed *infra*, the Court determines Petitioner's ineffective assistance claim in Ground One fails on the merits.

> **1.**      **Petitioner Has Not Shown Entitlement to Relief Based on the Claim Counsel Advised Him to Plead Guilty to and Failed to Challenge His Conspiracy Charge for Lacking a "Specific Object."**

Petitioner argues counsel was ineffective for failing to challenge the lack of a "specific object" for the charged conspiracy in Count Three of the indictment and advising him to plead guilty despite this defect.  (Doc. no. 1, p. 3, 6.)  It appears that by "lack of specific object," Petitioner means the charge failed to specify the amount of money laundered.  (See id. at 6 ("Such notice would have given the Petitioner a clear indication as to what specific amount of money he used or was in concert with others charged in the conspiracy to have laundered.").)  Petitioner's claim is meritless.

An indictment need not allege every particular of an offense to be constitutionally valid.  See United States v. Cusmano, 659 F.2d 714, 720 (6th Cir. 1981) ("The particularity of time, place, circumstances, causes, etc., in stating the manner and means of effecting the object of a conspiracy . . . is not essential to an indictment.") (quoting Glasser v. United States, 315 U.S. 60, 66 (1942)).  Rather, an indictment is "legally sufficient if it: (1) presents

the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Schmitz, 634 F.3d 1247, 1259 (11th Cir. 2011) (quotations omitted). Furthermore, "[i]f an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge." United States v. Wayerski, 624 F.3d 1342, 1349-50 (11th Cir. 2010) (quotations omitted).

Here, Count Three of the indictment meets all of the requirements of a valid indictment. Under 18 U.S.C. § 1956, conspiracy to launder money contains the following elements:

> (1) the defendant conducted or attempted to conduct a financial transaction; (2) the transaction involved the proceeds of an unlawful activity; (3) the defendant knew the proceeds were from some form of illegal activity; and (4) either (a) the defendant engaged in the financial transaction with the intent to promote the carrying on of a specified unlawful activity, or (b) the defendant engaged in the financial transaction knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or the control of the proceeds.

United States v. Stevenson, –F. App'x–, No. 15-11677, 2016 WL 5899170, at *1 (11th Cir. Oct. 11, 2016) (citing 18 U.S.C. § 1956(a)(1)(A)(i), (B)(i)).

Count Three of the indictment against the Petitioner reads:

> Beginning in a date unknown but at least as early as January 1, 2006, and continuing up to and including the date of this indictment, in the Southern District of Georgia and elsewhere, the defendants LATRON REDOLOS WARE aka "TWEET" aka "BIRDMAN" [and] ABDUL JABBAR MACK aka "MACK" aka "DUDE MACK" aka "DUL MACK" aided and abetted by each other and others both known and unknown to the grand jury, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury, to commit offenses against the United States,

to wit, to violate of Title 18, United States Code, Section 1956(a)(1)(B)(i). It was a part and object of the conspiracy that Defendants . . . aided and abetted by each other and others both known and unknown to the grand jury, would *knowingly conduct and attempt to conduct financial transactions* affecting interstate commerce, which transactions *involved the proceeds of specified unlawful activity, to wit, conspiracy to possess with intent to distribute and to distribute controlled substances and possession with intent to distribute controlled substances*, knowing that the *transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity*, and that while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

CR 111-270, doc. no. 186, pp. 3-4 (emphasis added).

Despite failing to allege a specific date or a specific amount of money laundered, Count Three of the indictment presents all the essential elements of the offense and refers specifically to the money laundering statute. It gave Petitioner ample notification of the charges he had to defend against, and his conviction under the indictment serves as a bar to double jeopardy. Therefore, Count Three of the indictment suffered no defect and was legally valid, despite lacking a "specific object."

Accordingly, counsel's failure to challenge the indictment, and advice to plead guilty, was not deficient and did not "fall below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

Furthermore, Petitioner never avers but for counsel's advice, he would have proceeded to trial. (Doc. no. 1.) Instead, Petitioner merely argues he was "deprived . . . of his right to proper notice of his illegal activities" by his counsel's failure. (Id. at 6.) Thus, because Petitioner has not argued there is a reasonable probability that but for counsel's alleged errors he would not have pleaded guilty and would have gone to trial, he has not

shown ineffective assistance.  See Hill, 474 U.S. at 59.  Therefore, Petitioner fails to carry his

heavy burden to show prejudice under the second prong of Strickland, and his ineffective

assistance of counsel claim in Ground One does not afford relief.

<b>2.      Petitioner's Guilty Plea was Knowingly and Voluntarily Entered.</b>

Having determined Petitioner did not receive constitutionally ineffective assistance of

counsel during plea negotiations, the Court will address any implication derived from the

§ 2255 motion that Petitioner's guilty plea was otherwise not knowingly and voluntarily

entered.

<b>a.      Standard for Enforceability of Guilty Pleas.</b>

Once a guilty plea becomes final, unless the record demonstrates the sentencing court

lacked the power to enter the conviction or impose the sentence, a petitioner may only

challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563,

569 (1989).  In conducting its analysis, the Court starts with the proposition a trial court may

not accept a guilty plea without an affirmative showing on the record that the plea was

intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh

Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth

Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily

entered because it involves a waiver of a number of the defendant's constitutional rights.  A

plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional

sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be

involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant

does not understand the nature of the constitutional protections he is waiving, or "if a

defendant has such an incomplete understanding of the charge that his plea cannot stand as

19

an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

> **b.** **Judge Hall's Colloquy with Petitioner Satisfied the Three Core Principles Required for Acceptance of a Guilty Plea.**

Judge Hall informed Petitioner in clear terms of the charges to which he was pleading guilty, as well as the penalties that might be imposed in the event of Petitioner's conviction, and Petitioner testified he understood the charges and penalties. (CR 111-270, doc. no. 302, pp. 4-6, 14-16.) Petitioner also admitted to the facts presented by the government as the factual basis for the pleas and told Judge Hall he wanted to plead guilty. (Id. at 32-34.) Judge Hall provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. (Id. at 9-12.) Petitioner testified no one had made him any promises other than those contained in the plea agreement to get him to plead guilty, and his decision to plead guilty was not the result of force, pressure, threats or promises. (Id. at 3, 18.)

Petitioner also testified that he had reviewed his case with counsel and was satisfied with the help he had received from counsel.  (Id. at 7, 9.)  Thus, Judge Hall's thorough plea colloquy ensured Petitioner understood both the nature of the charges and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty.  See Moriarty, 429 F.3d at 1019.  Petitioner has not argued, let alone shown a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty pleas.  See Dominguez Benitez, 542 U.S. at 83.

As such, Petitioner will not now be heard to claim his guilty plea was not knowingly and voluntarily entered.  Any such assertions are contradicted by the record of the Rule 11 hearing and Petitioner's sworn testimony at that proceeding.  See United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ( "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").

**E.     Petitioner Is Not Entitled to Relief on His Ground Four Ineffective Assistance Claim.**

Despite being barred from appeal by a valid collateral attack waiver, Petitioner, through counsel, filed an appeal to the Eleventh Circuit, where his conviction was affirmed. See CR 111-270, doc. no. 286; Mack, 575 F. App'x 869.  In Ground Four of his § 2255 motion, Petitioner now argues his appellate counsel was ineffective for failing to make appellate issues of Grounds One, Two, and Three, discussed *supra*.  (Doc. no. 1, p. 4.)  This claim is meritless and does not afford Petitioner relief.

Appellate counsel is not ineffective under Strickland for failing to raise meritless issues on appeal.  See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir.2001) ("[Petitioner's] appellate counsel was not ineffective for failing to raise a nonmeritorious issue."); Bolender

_v. Singletary_, 16 F.3d 1547, 1573 (11th Cir.1994) ("it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance"); United States v. Winfield, 960 F.2d 970, 974 (11th Cir.1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").

Here, Petitioner's counsel filed an <u>Anders</u> brief and requested withdrawal from the case. The Eleventh Circuit, after conducting an independent review of the entire record, found no arguable issues of merit and affirmed Petitioner's sentence and convictions. <u>See</u> <u>United States v. Mack</u>, 575 F. App'x 869 (11th Cir. 2014). Thus, appellate counsel had no meritorious issues he could have raised on appeal and Petitioner's claim of ineffective assistance is meritless.

Accordingly, Petitioner has not demonstrated entitlement to relief on any claim in his motion and it should be denied.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 11th day of January, 2017, at Augusta, Georgia.


BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA